UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

TAMARA L. COUICK,

Plaintiff,

v.                    4:10-cv-153

NORMA J. MORGAN, BEVERLY S. KICKLIGHTER, KAYE F. BARRS, and THE HOSPITAL AUTHORITY OF EFFINGHAM COUNTY, GEORGIA, d/b/a Effingham Hospital, Inc.,

Defendants.

## ORDER

### I. INTRODUCTION

Plaintiff Tamara Couick filed the instant action against Defendants Norma Morgan, Beverly Kicklighter, Kaye Barrs, and The Hospital Authority of Effingham County ("Effingham Hospital") on June 25, 2010. *See* Doc. 1. Plaintiff asserts claims under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"), for denying her leave (Count I) and then firing her (Count II). Plaintiff also alleges state law claims of intentional infliction of emotional distress ("IIED") (Count III) and negligent supervision and retention of her superiors (Count IV).

This matter is presently before the Court on Defendants' Motion to Dismiss. *See* Doc. 17. Defendants move to dismiss on five grounds. Defendants argue that Plaintiff has failed to state a claim for: (1) interference under FMLA because Plaintiff did not give proper notice to Defendants of her need for leave; (2) interference or retaliation under FMLA because Plaintiff did not have a serious health condition; (3) IIED because Plaintiff does not allege sufficiently extreme or outrageous conduct by the Hospital or Barrs; (4) negligent supervision and retention because this claim is derivative of Plaintiff's other claims; and (5) negligent supervision and retention because Plaintiff does not allege that the Hospital was aware that Barrs had a propensity to deny FMLA leave or to fire Plaintiff. *See* Doc. 17. For the reasons described below, Counts II, III, and IV survive, while Count I is dismissed.

### II. STANDARD OF REVIEW

In considering a Federal Rule of Civil Procedure 12(b)(6) motion, all facts in the plaintiff's complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint will not be dismissed so long as it contains factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (claim must have "facial plausibility"); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

### III. ANALYSIS

#### A. Family and Medical Leave Act

FMLA provides eligible employees with "12 workweeks of leave during any 12-month period for" five enumerated reasons. *See* 29 U.S.C. § 2612(a)(1). One ground provides leave where a "serious health condition" makes the employee unable to

perform her job functions. *See id.* at § 2612(a)(1)(D). Employees must give notice to their employers that they may qualify for FMLA leave for their leave to be protected. *See* 29 C.F.R. § 825.303 (2010); *Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005).

FMLA creates two types of claims to enforce these rights: (1) "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act," and (2) "retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001) (citing 29 U.S.C. § 2615(a)(1), (2); 29 C.F.R. § 825.220(c) (2001)). Plaintiff asserts both claims. *See* Doc. 14 at 1.

### 1. Interference

"To establish an interference claim, 'an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied.'" *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting *Strickland*, 239 F.3d at 1207). Plaintiff alleges that on the morning of Tuesday, March 10, 2009, Barrs twice denied Plaintiff the ability to leave work. *See* Doc. 14 at 6, 9-11. To properly allege entitlement to relief under FMLA, Plaintiff must plead that she qualified for leave under one of the enumerated grounds in 29 U.S.C. § 2612(a)(1) and that she gave sufficient notice under 29 C.F.R. § 825.303 (2010). Defendants challenge Plaintiff's pleading of both elements. *See* Doc. 17. As discussed in the next section, Plaintiff sufficiently pleads that she qualified for leave for a serious health condition. Plaintiff does not, however, properly allege notice for her interference claim.

To sufficiently plead notice where the need for leave is not foreseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a) (2010). Equally important as when an employee gives notice, is the content of such notice. "An employee is not required to assert expressly her right to take leave under the FMLA." *Cruz*, 428 F.3d at 1382 (citing 29 C.F.R. §§ 825.302(c), 825.303(b) (2005)). "[T]he employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a *potentially FMLA-qualifying reason.*" *Cruz*, 428 F.3d at 1382; 29 C.F.R. § 825.303(b) (2010). Unless the employer already knows it, "the employee must communicate the reason for the leave to the employer." *Cruz*, 428 F.3d at 1385. "Calling in 'sick' without providing more information will not be considered sufficient notice . . ." 29 C.F.R. § 825.303 (2010).

"Once an employee gives sufficient notice to her employer that potentially FMLA-qualifying leave is needed, the employer must then ascertain whether the employee's absence actually qualifies for FMLA protection." *Cruz*, 428 F.3d at 1383. (citing *Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1199, 1209 (11th Cir. 2001)); 29 C.F.R. § 825.303(b) (2010). If this notice is untimely or insufficient, the

2

employee is not entitled to leave. *See Cruz*, 428 F.3d at 1386; *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997).

In Count I, Plaintiff alleges that she requested FMLA-protected medical leave from Barrs at 8:15 a.m. on March 10, 2009, but was denied. *See* Doc. 14 at 6, 10. Plaintiff alleges that prior to Barrs denying her request, Plaintiff had informed Barrs and Effingham Hospital only that she was ill, her illness had gotten worse, and her treating physician instructed her to go home. *See* Doc. 14 at 5-6. Plaintiff did not explain "the reason for the leave to [her] employer." *See Cruz*, 428 F.3d at 1385.

The only indication that the Effingham Hospital, or its employees, may have had sufficient notice on March 10 is that Plaintiff alleges that Vicky Little, Effingham Hospital's Human Resources ("HR") representative, contacted Plaintiff's treating physician directly and discussed Plaintiff's condition on that day. *See* Doc. 14 at 6. Plaintiff has not alleged what details were discussed in this conversation, however, or that it took place before Barrs denied Plaintiff's 8:15 a.m. request for leave. Notice that comes after an alleged interference with an employee's FMLA rights is ineffective, even if the content would have been sufficient. *See Cruz*, 428 F.3d at 1385 (citing *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004)). Thus, Plaintiff's interference claim fails for insufficient notice.

### 2. Retaliation

To prove a FMLA retaliation claim without direct evidence of intent to retaliate, Plaintiff must allege that: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006); *Strickland*, 239 F.3d at 1207.

Defendants move to dismiss Plaintiff's retaliation claim on the ground that Plaintiff did not engage in a statutorily protected activity because she did not have a serious health condition. A serious health condition is an "illness, injury, impairment, or physical or mental condition that involves: (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Plaintiff alleges that she received continuing treatment for her illness. *See* Doc. 14 at 4-7.

> A serious health condition involving continuing treatment by a health care provider includes . . .
>
> (a) *Incapacity and treatment.* A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

3

(2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

(3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.

(4) Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30-day period shall be determined by the health care provider.

29 C.F.R. § 825.115 (2010).

Plaintiff alleges that she arrived at work on Friday, March 6, 2009, feeling ill. *See* Doc. 14 at 4. She went in to see her physician, Dr. James R. Cornwell, Jr., for an exam that day on the Effingham Hospital property. *See id.* He diagnosed Plaintiff with an upper respiratory infection and sinusitis, and prescribed her an antibiotic to take for five days. *See id.* Plaintiff alleges that her illness worsened over the weekend, but that she did work a full day Monday because she was unable to reach her supervisors. *See id.* On Tuesday morning, March 10, 2009, Plaintiff again went into work, but called Dr. Cornwell because her symptoms continued to worsen. *See id.* at 6. He instructed her to go home and rest. *See id.* Plaintiff requested leave from Barrs at around 8:15 a.m. that day, but was denied. *See id.* By 11:45 a.m., Plaintiff was unable to continue working due to her illness. *See id.* Plaintiff went to Barrs's office, laid her keys on Barrs's desk and said, "you are going to need these, I'm done, I have to go home." *Id.* Plaintiff did not intend to quit by this act and left all of her personal effects at her desk. *See id.*

Plaintiff returned to Dr. Cornwell's office the next morning on Wednesday, March 11, 2009, because her symptoms were still worsening. *See id.* at 7. Dr. Cornwell diagnosed Plaintiff with an upper respiratory infection, dehydration, nausea, vomiting, and influenza. *See id.* Dr. Cornwell treated Plaintiff in his office with IV fluids, Toradol, Phenergan, and Solu-Medrol. *See id.* He also prescribed Tamiflu, Phenergan, and Lorcet. *See id.* Dr. Cornwell provided Plaintiff a certificate showing that Plaintiff had been under his care from March 10 through 13 and that Plaintiff was to remain out of work until March 16. *See id.* at 6, Ex. E. Plaintiff then delivered this certificate to her HR office.

Plaintiff remained out of work until Friday, March 13, 2009, when HR called Plaintiff in to discuss the events of Tuesday, March 10, 2009. *See id.* at 7-8. Plaintiff went in to the hospital at 1:30 p.m. and learned that the hospital was discussing whether to consider Plaintiff's actions a resignation. *See id.* at 8. Two days later, on Sunday, March 15, HR called Plaintiff to tell her that the hospital accepted her resignation, effective Tuesday, March 10, 2009. *See id.*

Plaintiff must sufficiently allege that she was incapacitated for more than three consecutive days to survive Defendants' motion. *See* 29 C.F.R. § 825.115(a) (2010);

4

*Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1343-44 (11th Cir. 2003) (incapacity must last longer than 72 hours). "'[I]ncapacity' means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b) (2010).

Plaintiff began three consecutive days of "inability to work" when she left Barrs's office around noon, Tuesday, March 10, 2009. *See* Doc. 14 at 6-7. Her doctor had already told her to go home and rest. *See* Doc. 14 at 6. The following day he recommended that Plaintiff remain out of work five more days until March 16, 2010. *See* Doc. 14 at 6, Ex. D. Plaintiff has sufficiently plead incapacity, even if her return to the hospital on Friday, March 13, to discuss her impending firing, was a return to work. She was unable to work and absent from the hospital from noon Tuesday until 1:30 p.m. Friday. *See* Doc. 14 at 6-8. That seventy-three and a half hour period satisfied the three consecutive days of incapacity requirement.

It is of no consequence that Plaintiff's incapacity took place after Defendants allege that Plaintiff quit. First, Plaintiff alleges that HR fired her on Sunday, March 15, 2009; more than three days after her incapacity began. *See* Doc. 14 at 8. Second, incapacity after leave is taken counts toward whether an illness was a serious health condition. *See, e.g., Caldwell v. Holland of Texas, Inc.*, 208 F.3d 671, 675-76 (8th Cir. 2000); *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 163 (1st Cir. 1998).

Next, Plaintiff must sufficiently allege that she was treated in-person by a health care provider (or nurse or service provider) either two or more times within thirty days of her first day of incapacity or on at least one occasion followed by a regimen of continuing treatment under the supervision of the health care provider. 29 C.F.R. § 825.115(a)(1), (2), (3) (2010).

Plaintiff alleges that she was treated in-person by Dr. Cornwell on Friday, March 6, 2009, when she initially began to feel ill, and again on Wednesday, March 11. *See* Doc. 14 at 4, 7. Both of these visits are within thirty days of Plaintiff's first day of incapacity.

Plaintiff also alleges that Dr. Cornwell followed her initial visit with a regimen of continuing treatment. *See id.* at 5. "A regimen of continuing treatment includes, for example, a course of prescription medication (*e.g.*, an antibiotic) . . . " 29 C.F.R. § 825.113(c) (2010). Dr. Cornwell prescribed Plaintiff an antibiotic to take continuously for five days following his initial exam on March 6, 2009. Doc. 14 at 5.

Also, "[t]he first (or only) in-person treatment visit must take place within seven days of the first day of incapacity." 29 C.F.R. § 825.115(a)(3) (2010). Plaintiff has alleged that her first in-person visit with Dr. Cornwell took place on Friday, March 6, 2009. Doc. 14 at 5. This was four days before Plaintiff's consecutive period of incapacity began on Tuesday, March 10.

Defendant implies that Plaintiff's illness was the "flu and sniffles" and argues that the flu cannot constitute a serious health condition. Doc. 26 at 2. The Wage and

Hour Division though, has held that "if an individual with the flu is incapacitated for more than three consecutive calendar days and receives continuing treatment . . . the individual has a qualifying 'serious health condition' for purposes of FMLA." WHD Op. FMLA-86 (Dec. 12, 1996). Plaintiff has sufficiently alleged that she suffered from a serious health condition.

The Court need not address the remaining elements of a retaliation claim, as Defendants have not challenged Plaintiff's pleading on any other basis. *See* Doc. 17. Defendants' motion as to Plaintiff's retaliation claim is ***DENIED***.

### B. Intentional Infliction of Emotional Distress

Plaintiff has also alleged claims for IIED against Defendants Effingham Hospital and Barrs. *See* Doc. 14. In order to establish entitlement to relief for IIED, Plaintiff must prove four elements: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; (3) the defendant's conduct caused emotional distress; and (4) the resulting emotional distress was severe." *Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1557 (11th Cir. 1995) (applying Georgia law). Defendants only challenge Plaintiff's pleading of the first element regarding whether their conduct was extreme and outrageous. *See* Doc. 17 at 2.

"Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for [IIED] is a question of law." *Yarbray v. So. Bell Tel. & Tel. Co.*, 261 Ga. 703, 706 (1991)).

This element requires Plaintiff to plead facts that would lead an average member of the community to exclaim "Outrageous!," *Yarbray*, 261 Ga. at 706 (quoting RESTATEMENT (SECOND) OF TORTS § 46(1) cmt. d (1991)), or that Defendants' conduct was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society," *Kaiser v. Tara Ford, Inc.*, 248 Ga. App. 481, 488 (2001).

Employers are especially prone to this tort because at work "one person has control over another" and conduct "may produce a character of outrageousness that otherwise might not exist." *Lightning*, 60 F.3d at 1558 (quoting *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 230 (1985)); *see Coleman v. Housing Auth. of Americus*, 191 Ga. App. 166, 169 (1989) (employee, as captive victim, may fear reprisal for complaining). Termination alone, however, even if repugnant, cannot establish outrageous conduct without other allegations of abuse or disrespect. *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1229 (11th Cir. 1993) (applying Georgia law).

The plaintiff in *Yarbray*, alleged that her supervisor verbally abused her and that the defendants transferred her to an inferior position in order to deliberately retaliate against the plaintiff for testifying against the defendants. 261 Ga. at 703. The Court highlighted the defendants' deliberate attempt to retaliate as extreme and outrageous conduct. *See id.* at 706. In *Anderson v. Chatham*, the plaintiff alleged that the defendant threatened her not to sue him or else she would "be sorry" and that he wouldn't give her a reference after he fired

6

her. 190 Ga. App. 559, 566 (1989). The Court held that the plaintiff had sufficiently plead extreme and outrageous conduct because this otherwise insufficient threat came after a "pattern of abusive behavior." *See id.* at 567.

Here, Plaintiff alleges that Defendants Barrs and Effingham Hospital denied Plaintiff FMLA leave and ultimately fired her in retaliation for a complaint that she made against Barrs on February 10, 2009. *See* Doc. 14 at 4, 12, 13. Plaintiff further points to Effingham Hospital's failure to address Barrs's verbal abuse and its decision that Plaintiff had resigned as extreme and outrageous. *See id.* at 13.

In two letters attached to her Amended Complaint, Plaintiff alleges that over the course of several months, Barrs "berated" Plaintiff in front of her coworkers, screamed at Plaintiff over the phone, and otherwise acted unprofessionally. *See* Doc. 14, Exs. A (submitted to Effingham Hospital through Defendant Kicklighter, *see* Doc. 14 at 4), E (submitted to Effingham Hospital through Defendant Morgan, *see* Doc. 14 at 9).

Plaintiff alleged that Defendant Kicklighter spread rumors about Plaintiff among staff, yelled the "N" word at plaintiff three times, referenced Plaintiff's son's sexual orientation, made demeaning remarks towards gays and lesbians, openly took bets on when Plaintiff's child's marriage would end, and said that she felt sorry for Plaintiff's unborn grandchild. *See id.*

Many of Plaintiff's above complaints fall into the category of rough language, insults, and rude behavior that the law does not protect. *See Wilcher v. Confederate Packaging, Inc.*, 287 Ga. App. 451, 454 (2007). Plaintiff's allegations regarding her FMLA leave and termination are also insufficient to sustain an IIED claim alone. *See Miraliakbari v. Pennicooke*, 254 Ga. App. 156 (2002) (employer's refusal to allow employee to leave work to check on son who was in car accident insufficient); *Borden v. Johnson*, 196 Ga. App. 288 (1990) (employee alleging she was fired for being pregnant did not state an IIED claim).

Plaintiffs other allegations, however, combine to create an even more specific pattern of abusive behavior than that plead in *Chatham*, and suggest the same type of purposeful retaliation seen in *Yarbray*. Plaintiff has sufficiently plead facts which may lead an average member of the community to exclaim, "Outrageous!" *See Yarbray*, 261 Ga. at 706; *Chatham*, 190 Ga. App. at 567. The cases Defendants cite for the proposition that rough language in an employment context is insufficient to establish liability for IIED, all include a caveat for sustained abuse and harassment. *See e.g., Wilcher*, 287 Ga. App. at 454 (finding "a certain amount of rough language" and "occasional" inconsiderate acts insufficient); *Jarrard v. UPS*, 242 Ga. App. 58, 62 (2000) ("There is something innately outrageous [about] repeatedly abusing and threatening an employee over a lengthy period of time"); *Fox v. Ravinia Club, Inc.*, 202 Ga. App. 260, 261 (1991) (deciding without being able to consider longer term harassment and abuse). Defendants' motion to dismiss Count III is ***DENIED***.

### C. Negligent Supervision and Retention

Plaintiff has also alleged a negligent supervision and retention claim, under Georgia law, against Defendants Effingham Hospital, Kicklighter, and Morgan regarding Barrs's competency. *See* O.C.G.A. § 34-7-20. Defendants move to dismiss Count IV because it "is derivative of Plaintiff's other claims, which all fail." Doc. 17 at 2. This enumeration is ***DENIED*** because Plaintiff's retaliation and IIED claims do not fail.

Defendants also move to dismiss Count IV because "Plaintiff does not allege that the Hospital was aware that Kaye Barrs had a propensity to deny FMLA leave or to terminate Plaintiff's employment." Doc. 17 at 2. Defendants, however, overstate Plaintiff's pleading burden. *See Munroe v. Universal Health Servs., Inc.*, 277 Ga. 861, 863 (2004) (plaintiff need not allege defendant-employer knew of employee's propensity to commit the exact act that caused plaintiff's injury).

To prove her claim, Plaintiff must allege facts indicating that Defendants "reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior *relevant to* the injuries allegedly incurred by the plaintiff." *Munroe*, 277 Ga. at 863 (emphasis added). "The employer is subject to liability only for such harm as is within the risk." *Id.* (quoting RESTATEMENT (SECOND) AGENCY § 213 cmt. d (2004)); *see Tomczyk v. Jocks & Jills Rests., LLC*, 198 Fed. App'x 804, 815 (11th Cir. 2006) (applying Georgia law).

Plaintiff alleges that on February 10, 2009, she informed Defendants that Barrs "berated" Plaintiff in front of her coworkers, screamed at Plaintiff over the phone, and otherwise acted unprofessionally. *See* Doc. 14 at 4; Exs. A, E. Plaintiff alleges that Defendants failed to adequately address these complaints and that this failure allowed Barrs to retaliate against Plaintiff. *See* Doc. 14 at 15. As noted above, these allegations sufficiently state an IIED claim.

These allegations, if proved, should have put Defendants on notice that Barrs had a tendency to react emotionally when it came to Plaintiff. Retaliation is a reasonably foreseeable consequence for any boss who finds her employee has complained about her, but especially likely if that boss has a tendency to react emotionally. The single month separating Barrs's alleged verbal assaults and retaliation illustrate that this tendency was relevant to Plaintiff's injury and had the requisite causal connection. *Cf. Bunn-Penn v. So. Reg. Med. Corp.*, 227 Ga. App. 291, 294 (1997) (holding a year and half between incidents foreclosed finding employee's propensity caused plaintiff's injury). Plaintiff sufficiently states a claim for negligent supervision and retention.

8

## IV. CONCLUSION

Defendants' motion is *GRANTED* in part and *DENIED* in part. Count I is dismissed, while Counts II, III, and IV survive. The Court's denial of Defendant's Motion regarding Counts II, III, and IV reflects the fact that the Court has accepted Plaintiff's allegations as completely true, *see GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993), and does not prejudice the Defendant's ability to move for Summary Judgment at a later date.

This 14th day of December 2010.

*[signature]*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA